UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARTIN BOURKE and<br>DONEYN BOURKE<br><br>    Plaintiffs,<br><br>v.<br><br>RETAINED REALTY, INC., STEPHEN P.<br>HAYES, and HAYES & HAYES,<br>ATTORNEYS AT LAW, PC.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 13-11537-RWZ |

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
### OF RETAINED REALTY, INC.

Retained Realty Inc. ("Retained Realty") moves to dismiss because the Complaint fails to state a claim. There is not a single factual allegation of wrongdoing by Retained Realty in the Complaint. Moreover, is clear from the face of the Complaint that Retained Realty did not violate any debt collection regulations. The Complaint therefore fails to state a claim against Retained Realty and the Court should dismiss it.

### I. FACTS

All of the claims in the Complaint stem from a letter sent by Attorney Stephen P. Hayes to the plaintiffs on February 21, 2013 (the "Notice to Vacate"). The plaintiffs are the former owners and mortgagors of 6 Arkansas Avenue, Nantucket, Massachusetts (the "Property"). After a foreclosure sale on the Property, Attorney Hayes sent the Notice to Vacate to the

plaintiffs. Compl. ¶ 8.[1] Thought the Complaint does not attach a copy of the Notice to Vacate, it alleges that the Notice to Vacate informed the plaintiffs that "Retained [Realty] had purchased the property at the purported foreclosure sale and that the Bourke's (sic) were required to vacate the premises." Id.; see also Hayes Decl. Ex. 1 (being filed herewith). The Notice to Vacate allegedly went on to state that "the Bourke's (sic) were liable for 'use and occupation' payments of $100.00 commencing on April 1, 2011." Compl. at ¶ 11; Hayes Decl. Ex. 1. The plaintiffs failed to vacate the property and Retained Realty brought a summary process complaint against them in the Nantucket District Court on or about March 25, 2013. Id. at ¶ 39. The summary process complaint sought a judgment for use and occupancy of approximately $100 per day commencing April 1, 2011. Id. at ¶ 42.

The Complaint alleges no additional relevant facts. From that conduct alone, the Complaint alleges two counts: Count One for a violation of the Fair Debt Collection Practices Act ("FDCPA") and the Massachusetts Fair Debt Collection Practices Act ("MFDCPA"); and Count Two for a violation of M.G.L. c. 93A, § 2 ("Chapter 93A") based on the alleged violations of the FDCPA and the MFDCPA. Retained Realty timely removed the action to this Court on June 27, 2013 (ECF No. 1) and now moves to dismiss.

## II.  ARGUMENT

### A.  Motion to Dismiss Standard.

The Court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[1] Undersigned counsel has not yet received a certified copy of the state court record from the Nantucket Superior Court. All references to the Complaint are therefore to the copy that was served on Nantucket Bank, ECF No. 1-1 at pages 6-31.

Case 1:13-cv-11537-RWZ   Document 8   Filed 07/18/13   Page 3 of 13

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Rodriguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 40 (1st Cir. 2012) (quoting Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

The Court's task in deciding a motion to dismiss takes two steps: "an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012). Second, the Court "must determine whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Morales-Cruz, 676 F.3d at 224 (quoting Iqbal, 556 U.S. at 663).

Ordinarily, a court may not consider any documents that are outside of the complaint unless the motion is converted into one for summary judgment. There is, however, a narrow exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). "When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." Id.

(quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)). "'[W]hen . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (quoting id.). The Court may therefore consider the attachments to the Hayes Declaration in deciding this Motion to Dismiss because the Complaint's claims stem entirely from those attachments.

**B.     Retained Realty is Not Vicariously Liable For Its Attorney's Debt Collection Activities.**

The plaintiffs' entire claim against Retained Realty fails because Retained Realty did not violate either the FDCPA or the MFDCPA. Under the FDCPA, creditors cannot be held vicariously liable for a debt collector's actions. Under the MFDCPA, even if Retained Realty were considered a "creditor," the Complaint does not allege that it took any action against the plaintiffs whatsoever. The Court must therefore dismiss the claims against Retained Realty.

*1.     Retained Realty Is Not Vicariously Liable for the Actions of its Attorneys Under the FDCPA.*

The Court should dismiss the FDCPA claim against Retained Realty because Retained Realty is not a "debt collector." It cannot be held liable for the actions of its debt collectors under the FDCPA. It is well-settled law that the FDCPA applies only to debt collectors, not to creditors. See Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985). "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned. See S.Rep. No. 95–382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S. Code Cong. & Ad. News 1695, 1698." Id. The FDCPA therefore does

not impose vicarious liability on creditors if their debt collectors violate the act. See Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 108 (6th Cir. 1996) (holding that vicarious liability for creditor based on debt collector's actions would run afoul of Congress's intent).

In this case, the Complaint alleges no facts that would suggest that Retained Realty was attempting to collect a debt on behalf of another. It is therefore not a "debt collector" as defined by the FDCPA. See 15 U.S.C. § 1692a(6). Rather, the Complaint alleges that Attorney Hayes and Hayes & Hayes were debt collectors. See Compl. ¶ 13. It alleges that Retained Realty was a "creditor." Id. at ¶ 14. As discussed elsewhere in this Memorandum, Attorney Hayes's actions did not violate the FDCPA. But even if they did, any liability under the FDCPA could not be imputed to Retained Realty because it is not a "debt collector" as defined by 15 U.S.C. § 1692a(6). The Court should therefore dismiss the FDCPA claims against Retained Realty.

> 2. *The Complaint Fails to Allege Sufficient Facts to Hold Retained Realty Liable for Its Debt Collector's Actions Under the MFDCPA.*

The Court should also dismiss the MFDCPA claims against Retained Realty because the Complaint fails to allege any facts to demonstrate that Retained Realty is vicariously liable for the actions of its attorney. Hayes & Hayes is an independent contractor of Retained Realty. Attorney Hayes is a shareholder of Hayes & Hayes. Compl. ¶ 4. The only allegation anywhere in the Complaint to support a claim against Retained Realty is a conclusory allegation that "As an agent for Retained and acting on their behalf, Retained is/are liable for the acts of Attorney Hayes and Hayes & Hayes." Compl. ¶ 29. That allegation is insufficient.

First, that allegation is a legal conclusion, not a fact. The Court therefore cannot consider it in deciding a motion to dismiss. See Morales-Cruz, 676 F.3d at 224. Second, "[g]enerally speaking, the employer of an independent contractor is not liable for harm caused to another by

5

the independent contractor's negligence, except where the employer retained some control over the manner in which the work was performed." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 407 (2003) (citing Lyon v. Morphew, 424 Mass. 828, 834 (1997)). In order to establish liability on the part of the employer of an independent contractor, the plaintiff must show "such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Id. (quoting Restatement (Second) of Torts § 414 comment (c) (1965)).

The Complaint fails to allege any facts that support a conclusion that Retained Realty would be liable for actions taken by its independent contractor. Indeed, the conclusion that Retained Realty could be liable for an alleged violation of the MFDCPA would require *two* levels of vicarious liability. The plaintiffs would have to first show that Hayes & Hayes is vicariously liable for the actions taken by Attorney Hayes. They would then have to show that Retained Realty exercises sufficient control over the actions of its vendor, Hayes & Hayes, to make it liable for the actions of Hayes & Hayes. None of this is pled anywhere in the Complaint. The Complaint does not allege that Retained Realty drafted the Notice to Vacate or retained any control over the manner in which Hayes & Hayes performed the task for which they were hired. The Complaint therefore fails to plead sufficient facts to plausibly suggest that Retained Realty is liable for the actions of Attorney Hayes. The Court should dismiss the Complaint.

**C.     Retained Realty Did Not Violate the FDCPA or the MFDCPA.**

Moreover, the plaintiffs' entire claim against Retained Realty fails because the alleged violations of the FDCPA and MFDCPA were not violations at all. The Notice to Vacate was not an attempt to collect a "debt" as defined by either regulation.

"In order to prevail on an FDCPA claim, plaintiff must prove that (1) she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants have engaged in an act or omission prohibited by the FDCPA." Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349, 356 (D. Mass. 2008).  Here, the Complaint fails to adequately plead even the first element, so the plaintiffs' claims against all defendants fail as a matter of law.

The definition of "debt" in both the MFDCPA and the FDCPA does not include future liability.  Here, the plaintiffs mischaracterize the statement in the Notice to Vacate regarding a potential $100-per-day use and occupancy judgment as a "debt," even though that amount was not alleged to be due at the time Attorney Hayes sent the Notice to Vacate.

*1.     An Anticipated Use and Occupancy Judgment is Not a "Debt" Under the FDCPA.*

The Notice to Vacate could not violate the FDCPA because its reference to a $100 "use and occupation" amount is not an attempt to collect a debt as defined by FDCPA.  The FDCPA defines "debt" as: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

"[B]ecause not all obligations to pay are considered 'debts' under the Act, the definition of 'debt' thus serves to limit the scope of the FDCPA." Berman v. GC Servs. Ltd. P'ship, 146 F.3d 482, 484 (7th Cir. 1998) (quoting Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997)).  Determining whether an obligation is a "debt" under the FDCPA requires a two-step inquiry:  "First, the court must ask whether there is an obligation to

pay money arising out of a consensual transaction. If so, the court must determine whether 'money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.'" Kreisler v. Latino Union, Inc., No. 06 CV 3968, 2007 WL 1118408, at *4 (N.D. Ill. Apr. 12, 2007) (citation omitted) (quoting Bass, 111 F.3d at 1326).

The $100 per day "use and occupation" fee on which the Complaint focuses is not a "debt" under the FDCPA because it did not arise out of a consensual transaction. See Kreisler, 2007 WL 1118408, at *4. Rather, the Notice to Vacate accurately informs the plaintiffs, who were at that time holdover occupants of the Property, that if the defendant was forced to initiate a legal proceeding against them to recover possession of the Property, then it would seek to recover a judgment for use and occupancy.

It is inaccurate to suggest that the defendants were demanding immediate payment of any amount. The Complaint does not allege that the Notice to Vacate asked the plaintiffs to pay anything. The Complaint alleges that the Notice to Vacate sought the use and occupancy amount "commencing April 1, 2011." See Compl. ¶ 11; Hayes Decl. Ex. 1. No reasonable person would read that letter on February 21, 2011 and think they were obligated to pay anything yet. See id.

The plaintiff's allegations here are factually similar to the facts of Baer v. Harmon Law Offices, P.C., No. 3:08-30063-MAP, 2009 WL 102698, at *1 (D. Mass. Jan. 14, 2009). In Baer, the plaintiffs sued Harmon Law Offices, P.C. under the FDCPA over a similar warning in a notice to quit. The putative class in that case consisted of tenants who received a notice to quit after their landlord's property had been foreclosed and purchased by the foreclosing entity. Id. Judge Ponsor roundly rejected the plaintiffs' argument that a notice to quit, which made the same warning as in this case, was a "debt" under the FDCPA. The court ruled that "[t]he reference to

potential damages that Defendant might seek on behalf of its client if it was required to go to court to obtain an involuntary eviction cannot be twisted into a demand for payment of a 'debt.'" Id.  The court explained that the notice to quit in that case (1) made no reference to a preexisting debt, (2) sought only use and occupancy, not past-due rent, and (3) actually helped the lessor avoid paying a use and occupancy judgment by warning her of that potential.  Id.

In this case, the Court should rule that the Notice to Vacate was not an attempt to collect a debt for the same reasons.  The Notice to Vacate made no reference to any preexisting debt by the plaintiffs.  See Hayes Decl. Ex. 1.  It referred only to potential future liability for use and occupancy.  Id.  It could have actually *helped* the plaintiffs avoid paying a use and occupancy judgment if they voluntarily vacated the Property.  It was therefore not an attempt to collect a debt under the FDCPA.  The plaintiffs would be liable for use and occupancy because of their refusal to quit the Property, not because of a consensual consumer transaction.  See M.G.L. c. 239, § 3.

> 2. *An Anticipated Use and Occupancy Judgment is Not a "Debt" Under the MFDCPA.*

The Notice to Vacate was not an attempt to collect a "debt" as defined by the MFDCPA because the MFDCPA's definition of "debt" is even narrower than the FDCPA definition. Under the MFDCPA, a "debt" is defined as:

> money or its equivalent which is, or is alleged to be, more than 30 days past due and owing, unless a different period is agreed to by the debtor, under a single account as a result of a purchase, lease, or loan of goods, services, or real or personal property, for personal, family or household purposes or as a result of a loan of money which is obtained for personal, family or household purposes whether or not the obligation has been reduced to judgment.

940 CMR 7.03.  A "debt" under the MFDCPA, therefore, must arise out of a purchase, lease, or loan.  See Albright v. Trustees of Villa Grande Condo., 2001 Mass. App. Div. 88 (2001).  A

condo fee assessment, for example, is not considered a "debt" under the MFDCPA. <u>Id.</u> Moreover, for an obligation to fall under the MFDCPA definition of a "debt," it must also be "more than 30 days past due and owing." 940 CMR 7.03. Future use and occupancy liability could not fall within that definition because it is not alleged to be due and owing—it does not even exist.

The reference in the Notice to Vacate to anticipated use and occupancy liability by the plaintiffs was not an attempt to collect a "debt" within the definition of the MFDCPA.[2] The anticipated use and occupancy liability referred to in the Notice to Vacate did not arise out of a purchase, lease, or loan. It arose because of the plaintiffs' refusal to quit the Property. Moreover, the anticipated liability was just that—anticipated. It was not, and was not alleged to be, more than 30 days past due and owing. <u>See</u> Hayes Decl. Ex. 1. It therefore did not meet the definition of "debt" under the MFDCPA.

D.      **The Chapter 93A Claim Fails As a Matter of Law.**

Count Two of the Complaint is brought under Chapter 93A. That Count fails as a matter of law because, (1) the plaintiff failed to send a written demand for relief to Retained Realty, and (2), the substance of the plaintiffs' Chapter 93A claim is entirely premised on statutory violations that fail as a matter of law.

---

[2] Any attempt to characterize the Notice to Vacate as an attempt to collect on the original mortgage debt would be unavailing. The Complaint does not allege that Retained Realty ever owned the subject mortgage or the debt that the mortgage secures. The Complaint merely alleges that Retained Realty purchased the Property at a foreclosure sale. Compl. ¶¶ 8, 14. There is also no allegation that Retained Realty was ever acting on behalf of the owner of the mortgage debt. The Complaint's allegations relate solely to the use and occupancy language of the Notice to Vacate. <u>See, e.g.</u>, <u>id.</u> at ¶ 14.

### 1. *The Plaintiff Failed to Serve Retained Realty With a Written Demand for Relief.*

The Chapter 93A claim against Retained Realty fails because the plaintiffs did not send Retained Realty a written demand for relief. Service of such a demand letter is a statutory prerequisite to filing suit under Chapter 93A. See M.G.L. c. 93A, § 9; Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 812 (1975). "A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a *special element must be alleged and proved*." Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 287 (1985) (emphasis in original) (quoting Entrialgo, 368 Mass. at 813). "The statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" Rodi v. S. New England Sch. Of Law, 389 F.3d 5, 19 (1st Cir. 2004) (quoting Entrialgo, 368 Mass. at 812). Where the plaintiff fails to allege or prove that she sent a written demand for relief, her Chapter 93A claim must be dismissed. See id. at 19 (dismissing plaintiff's Chapter 93A claim under Fed. R. Civ. P. 12(b)(6) for failure to plead service of a written demand for relief).

In this case, the plaintiffs do not allege that they sent a written demand for relief to Retained Realty prior to filing suit. See generally Compl. Their only factual allegation regarding such a demand letter is that "In their letter dated March 3, 2013, the Bourkes also accused Attorney Hayes and Hayes & Hayes of unfair and deceptive acts and practices—identifying the March 3, 2013 letter as a 'demand' letter pursuant to Chapter 93A" Compl. ¶ 34. The Complaint makes no similar factual allegation regarding a letter to Retained Realty. The Complaint makes the conclusory allegation that "The Bourkes sent a [singular] Chapter 93A demand letter to Defendants on or about March 3, 2013 . . . ." Compl. ¶ 57. That allegation is clear. It alleges that the plaintiffs sent only one demand letter. Id. The demand letter was

11

addressed only to Attorney Hayes and Hayes & Hayes. Compl. ¶ 34. A true and correct copy of the alleged demand letter is attached as Exhibit 2 to the Hayes Declaration. See Hayes Decl. Ex. 2. The letter is not addressed to Retained Realty. Id.

Since the Complaint fails to allege that the plaintiffs sent such a written demand for relief to Retained Realty, the plaintiffs' Chapter 93A claim against Retained Realty fails as a matter of law. The Court must therefore dismiss Count Two against Retained Realty.

*2. The Plaintiffs' Chapter 93A Claim Also Fails Because It Is Derivative of Their Other Failed Theories.*

Moreover, the plaintiffs' Chapter 93A claim fails on its merits because it is entirely premised on the plaintiffs' other flawed theories of liability. The plaintiffs allege that the defendants violated Chapter 93A by violating the MFDCPA and the FDCPA. Since those underlying claims fail, the Chapter 93A claim must also fail on its merits.

A claim for a violation of Chapter 93A that is entirely premised on an alleged violation of another statute must fail where the alleged statutory violation fails. Brunelle v. W.E. Aubuchon Co., Inc., 60 Mass. App. Ct. 626, 628 (2004) (dismissing plaintiff's Chapter 93A claim where claim was derivative of failed claim under state building code). Courts routinely reject derivative Chapter 93A claims where the main claims, like the ones in this case, fail as a matter of law. See, e.g., Shaner v. Chase Bank, USA, N.A., 570 F. Supp. 2d 195, 201 (D. Mass. 2008) aff'd, 587 F.3d 488 (1st Cir. 2009) ("[Plaintiff's] Chapter 93A claim is based on the putative violation of TILA. . . . Her Chapter 93A claim thus fails as the TILA claim fails."). This Court should do the same. The Court should dismiss the plaintiffs' Chapter 93A claims against Retained Realty because the alleged statutory violations on which they are based fail as a matter of law.

### III.  CONCLUSION

For all the reasons stated above, the Court should dismiss the plaintiffs' complaint against Retained Realty and enter a judgment in favor of Retained Realty.

        Respectfully submitted,

        RETAINED REALTY, INC.

        By its attorneys,

        /s/ Gregory S. Bombard
        Mary Ellen Manganelli, BBO # 641658
        Gregory S. Bombard, BBO # 679720
        Bulkley, Richardson, and Gelinas, LLP
        125 High Street
        Oliver Street Tower, 16th Floor
        Boston, MA 02110
        (617) 368-2500
        mmanganelli@bulkley.com
        gbombard@bulkley.com

Dated: July 18, 2013

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 18, 2013.

        /s/ Gregory S. Bombard
        Gregory S. Bombard

1557411v1