UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARTIN BOURKE and<br>DONEYN BOURKE<br><br>    Plaintiffs,<br><br>v.<br><br>RETAINED REALTY, INC., STEPHEN P.<br>HAYES, and HAYES & HAYES,<br>ATTORNEYS AT LAW, PC.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 13-11537-RWZ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS, STEPHEN P. HAYES AND HAYES & HAYES ATTORNEYS AT LAW, PC

The defendants Stephen P. Hayes ("Hayes") and Hayes & Hayes, Attorneys at Law, PC ("the Firm") move to dismiss the plaintiffs' Complaint pursuant to Rule 12(b)(6).

The Complaint contains two counts. The first alleges that the defendants violated the Fair Debt Collection Practices Act ("FDCPA") and the Massachusetts Fair Debt Collection Practices Act ("MFDCPA"). The second claims the defendants violated M.G.L.c. 93A, § 9. Count II's allegations are premised entirely on the defendants' alleged violations of the FDCPA and the MFDCPA. The facts alleged support none of those claims. The Court must therefore dismiss the Complaint against Hayes and the Firm.

## I. FACTS

The plaintiffs are the former owners of the real property ("Property") known as and numbered 6 Arkansas Avenue, Nantucket, Massachusetts.

The Property was foreclosed on in March, 2011. (Complaint ¶8).  On February 21, 2013, Hayes sent each of the plaintiffs a Notice to Vacate. (Compl. ¶7,8). The Notice to Vacate informed the plaintiffs that Retained Realty, Inc. owned the property pursuant to the foreclosure sale. (See, Hayes Decl. Ex. 1 and 2).  It also informed the plaintiffs that under Massachusetts law, Retained Realty, Inc.  had the exclusive right to use and possess the Property. Id. It indicated that the plaintiffs were be "liable for use and occupation at $100 per day from April 1, 2011." (See, Hayes Decl. Ex. 1 and 2).

On March 3, 2013, the plaintiffs sent a purported Chapter 93A demand letter to Hayes and the Firm. (Compl. ¶34; Hayes Decl. Ex. 4).  The letter makes conclusory allegations that the foreclosure sale of the Property did not comply with Massachusetts law. (Hayes Decl. Ex. 3).  It then says that the Notice to Vacate technically violated various regulations promulgated by the Massachusetts Attorney General regarding debt collection. (See, Id. at 3). The plaintiffs demanded $64,500 in damages and an unspecified amount in attorney's fees. (Id).

Because Hayes and the Firm have not been presented with facts claiming that they violated any statute or regulation and did not commit any act that violates Chapter 93A, the Complaint fails to state a claim upon which relief can be granted.

## II. ARGUMENT

### A.    Motion to Dismiss Standard.

The Court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Rule 8 pleading standard "demands more than an unadorned, the-

2

defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Rodriguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 40 (1st Cir. 2012) (quoting Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

The Court's task in deciding a motion to dismiss takes two steps: First, "an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012). The Second, the Court "must determine whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Morales-Cruz, 676 F.3d at 224 (quoting Iqbal, 556 U.S. at 663).

## B.   Scope of the Record.

The Complaint's allegations are based, almost entirely, on the content of various letters between the parties. Count I is premised entirely on one sentence in the February 21, 2013 Notice to Vacate.  Those letters are extensively referred to in the Complaint yet, for reasons that are unclear but must be strategic, to the plaintiffs do not submit the letters with their Complaint.

The Court may consider the letters in deciding this motion.  It is true that the Court may not ordinarily consider documents outside of the complaint unless the motion is converted into one for summary judgment. There is, however, an exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson v.

Page, 987 F.2d 1, 3 (1st Cir. 1993)). "When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." Id. (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)). "'[W]hen . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'"Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (quoting id.).

This Complaint's claims are reliant exclusively on the contents of the three letters to which it refers. Those letters therefore "merge" into the pleadings and are properly a part of the Court's record in deciding the defendants' motion. The Court should therefore consider the letters, true copies of which are attached to the Hayes Declaration, in deciding this motion.

C.      **The Defendants Did Not Violate the FDCPA or the MFDCPA.**

Count I of the Complaint fails because none of the defendants violated either the FDCPA or the MFDCPA. "In order to prevail on an FDCPA claim, plaintiff must prove that (1) she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants have engaged in an act or omission prohibited by the FDCPA." Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349, 356 (D. Mass. 2008). Here, the Complaint fails to adequately plead even the first element, so the plaintiffs' claims against all defendants fail as a matter of law.

The definition of "debt" in both the MFDCPA and the FDCPA does not include future debts. Here, the plaintiffs mischaracterize the statement in the Notice to Vacate regarding a

4

potential $100-per-day use and occupancy judgment as a "debt," even though that amount was not alleged to be due at the time Hayes sent the February 21, 2011 Notice to Vacate.

### 1. An Anticipated Use and Occupancy Judgment is Not a "Debt" Under the FDCPA.

The Notice to Vacate could not violate the FDCPA because its reference to a $100 "use and occupation" amount is not an attempt to collect a debt as defined by FDCPA. The FDCPA defines "debt" as: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

"[B]ecause not all obligations to pay are considered 'debts' under the Act, the definition of 'debt' thus serves to limit the scope of the FDCPA." Berman v. GC Servs. Ltd. P'ship, 146 F.3d 482, 484 (7th Cir. 1998) (quoting Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997)). Determining whether an obligation is a "debt" under the FDCPA requires a two-step inquiry: "First, the court must ask whether there is an obligation to pay money arising out of a consensual transaction. If so, the court must determine whether 'money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.'" Kreisler v. Latino Union, Inc., No. 06 CV 3968, 2007 WL 1118408, at *4 (N.D. Ill. Apr. 12, 2007) (citation omitted) (quoting Bass, 111 F.3d at 1326).

The $100 per day "use and occupation" fee on which the Complaint focuses is not a "debt" under the FDCPA because it did not arise out of a consensual transaction. See Kreisler, 2007 WL 1118408, at *4. Rather, the Notice to Vacate correctly informs the plaintiffs, who were at that time tenants at sufferance with no right to occupy the property, that if the defendant was

5

forced to initiate a legal proceeding against them to recover possession of the Property, then it would seek to recover a judgment for use and occupancy. It is quite inaccurate to suggest that the defendants were then demanding payment of that amount. Indeed, the use and occupancy was, at best, a future contingency.

The plaintiff's allegations here are factually similar to those in <u>Baer v. Harmon Law Offices</u>, P.C., No. 3:08-30063-MAP, 2009 WL 102698, at *1 (D. Mass. Jan. 14, 2009). In <u>Baer</u>, the plaintiffs sued a law firm under the FDCPA over a similar warning in a notice to quit. The putative consisted of tenants who received a notice to quit after their landlord's property had been foreclosed and purchased by the foreclosing entity. <u>Id</u>. Judge Ponsor soundly rejected the plaintiffs' argument that a notice to quit (which gave the same warning as made here) was a "debt" under the FDCPA. The court ruled that "[t]he reference to potential damages that Defendant might seek on behalf of its client if it was required to go to court to obtain an involuntary eviction cannot be twisted into a demand for payment of a 'debt.'" <u>Id</u>. The court explained that the notice to quit in that case (1) made no reference to a preexisting debt, (2) sought only use and occupancy, not past-due rent, and (3) actually helped the lessor avoid paying a use and occupancy judgment by warning her of that potential. <u>Id</u>.

In this case, the Court should determine that the Notice to Vacate was not an attempt to collect a debt for the same reasons. The Notice to Vacate made no reference to any preexisting debt by the plaintiffs. It referred only to *potential* use and occupancy. The Notice could have actually helped the plaintiffs avoid paying a use and occupancy judgment if they voluntarily vacated the Property. It was therefore not an attempt to collect a "debt" under the FDCPA. The plaintiffs would be liable for use and occupancy because of their refusal to quit the Property, not because of any consensual transaction into which they entered. <u>See</u>, M.G.L. c. 239, § 3.

6

*2. An Anticipated Use and Occupancy Judgment is Not a "Debt" Under the MFDCPA.*

The Notice to Vacate was not an attempt to collect a "debt" as defined by the MFDCPA because the MFDCPA's definition of "debt" is even narrower than the FDCPA definition. Under the MFDCPA, a "debt" is defined as:

> money or its equivalent which is, or is alleged to be, more than 30 days past due and owing, unless a different period is agreed to by the debtor, under a single account as a result of a purchase, lease, or loan of goods, services, or real or personal property, for personal, family or household purposes or as a result of a loan of money which is obtained for personal, family or household purposes whether or not the obligation has been reduced to judgment.

940 CMR 7.03. A "debt" under the MFDCPA, therefore, must arise out of a purchase, lease, or loan. See Albright v. Trustees of Villa Grande Condo., 2001 Mass. App. Div. 88 (2001). A condominium fee assessment, for example, is not considered a "debt" under the MFDCPA. Id. Moreover, for an obligation to fall under the MFDCPA definition of a "debt," it must also be "more than 30 days past due and owing." 940 CMR 7.03. An anticipated judgment could not fall within that definition because it is not alleged to be due and owing—it does not even exist.

The reference in the Notice to Vacate to an anticipated use and occupancy judgment against the plaintiffs was not an attempt to collect a "debt" within the definition of the MFDCPA.[1] The anticipated use and occupancy judgment referred to in the Notice to Vacate did not arise out of a purchase, lease, or loan. It arose because of the plaintiffs' refusal to quit the Property. Moreover, the anticipated judgment was just that—anticipated. It was not, and was

---

[1] An attempt to characterize the Notice to Vacate as an attempt to collect on the original mortgage debt under the MFDCPA would be unavailing. The MFDCPA restrains the collection activities of "creditors," and the MFDCPA definition of "creditor" excludes a creditor's "activities [which] are solely for the purpose of repossessing any collateral or property of the creditor securing such a debt." Conrad v. Fed. Home Loan Mortgage Corp., No. BACV2011-00653, 2012 WL 2335271, at *5 (Mass. Super. Apr. 24, 2012) (quoting 940 CMR 7.03). In this case, there can be no dispute that the Notice to Quit came as part of repossessing collateral securing the mortgage debt.

never alleged to be, more than 30 days past due and owning. It therefore did not constitute a "debt" under the MFDCPA.

**D.      The ChapteR 93A Claim Fails As a Matter of Law.**

Count II is a claim under M.G.L.c. 93A.  That claim fails as a matter of law because the substance of the plaintiff's Chapter 93A claim is entirely premised on statutory violations that themselves fail as a matter of law. The plaintiffs allege that the defendants violated Chapter 93A by violating the MFDCPA and the FDCPA.  Because those underlying claims fail, the Chapter 93A claim also necessarily fails.

It is well-established that a Chapter 93A claim that is entirely premised on an alleged violation of another statute must fail where the alleged statutory violation fails. Brunelle v. W.E. Aubuchon Co., Inc., 60 Mass. App. Ct. 626, 628 (2004) (dismissing plaintiff's Chapter 93A claim where claim was derivative of failed claim under state building code). Courts routinely reject derivative Chapter 93A claims where the host claims, like those here, fail as a matter of law. See, e.g., In re Holland, 04-18099-JNF, 2008 WL 4809493, at *12 (Bankr. D. Mass. Oct. 30, 2008) ("Debtor cannot prevail on her Ch. 93A claim at trial because the claim is solely predicated on the RESPA violation which the Court has rejected."); Shaner v. Chase Bank, USA, N.A., 570 F. Supp. 2d 195, 201 (D. Mass. 2008) aff'd, 587 F.3d 488 (1st Cir. 2009) ("[Plaintiff's] Chapter 93A claim is based on the putative violation of TILA. . . . Her Chapter 93A claim thus fails as the TILA claim fails.").

The defendants suggest respectfully that the Court should do the same. The Court should dismiss the plaintiffs' Chapter 93A claims against the defendants because the alleged statutory violations on which they are based fail as a matter of law.

## III. CONCLUSION

Based on the foregoing, the defendants request that the Court dismiss the plaintiffs'

complaint against them and enter a judgment in this favor, with costs and fees to the plaintffs.

STEPHEN P. HAYES; and HAYES &
HAYES, ATTORNEYS AT LAW, P.C.,
By their attorney,


David M. O'Connor
BBO No. 544166
O'CONNOR & ASSOCIATES, LLC
325 Boston Post Road, Unit 1
Sudbury, MA  01776
(978) 443-3510
doconnor@oconnorllc.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 29, 2013.

David M. O'Connor