UNITED STATES
DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Martin and Doneyn Bourke )<br>    Plaintiffs )<br> )<br>v. )<br> )<br>Retained Realty, Inc., Stephen P. )<br>Hayes, Hayes & Hayes, Attorneys )<br>At Law, PC, )<br>    Defendants )<br> ) | Civil Action No. 13-11537-RWZ |

### PLAINTIFFS' OPPOSITION TO DEFENDANT RETAINED REALTY'S MOTION TO DISMISS
**(Memorandum of Reasons Incorporated)**

NOW COMES Plaintiffs Martin and Doneyn Bourke (hereinafter "Plaintiffs," or the "Bourkes" as the case may be) by and though counsel and files their Opposition to Defendant Retained Realty's Motion to Dismiss. In support of their opposition Plaintiffs state as follows:

### I.     BACKGROUND

1.     This case arises out of a residential mortgage relationship between the Bourkes and the allegedly unlawful action(s) of Defendant Retained Realty ("Retained") and its lawyers (Defendants Stephen P. Hayes and Hayes & Hayes, Attoneys at Law, PC; collectively "Hayes & Hayes") in seeking to collect moneys from the Bourkes following an alleged non-judicial foreclosure sale of the Bourke's home in April 2011.

2.     The facts of the matter are as set forth in the Bourkes' complaint wherein the Bourkes have brought suit against the Defendants herein for violations of the Fair Debt

Collection Practices Act ("FDCPA") at 15 U.S.C. 1692, *et seq.*,[1] the FDCPA's state analog – the Massachusetts Fair Debt Collection Practices Act ("MFDCPA") at G.L. c. 93. s. 49 and the MA Attorney General's regulations at 940 CMR 7.00, *et seq.*, all as related to demands for "use and occupancy" payment(s) following the purported non-judicial foreclosure of the Bourkes' home. See complaint.

3.   By letter dated February 21, 2013, the Bourkes were served with a "Notice to Vacate" from Hayes & Hayes.

4.   The Notice to Vacate came some two (2) years after a purported foreclosure sale which the Bourkes have disputed was valid.

5.   Despite the fact that the claims brought by the Bourkes were based on the Massachusetts version of the Fair Debt Collection Practices Act – and the Massachusetts regulations thereto at 940 CMR 7.00, Retained removed this matter to federal court and immediately filed the instant motion to dismiss.[2]

---

[1] With respect to the unlawful use and occupancy demand, the Hayes Defendants – in addition to violating the specific provisions of 940 CMR 7.00 listed in the complaint, at minimum violated the FDCPA: (1) by failing to state precisely "the amount of the debt" as required by 15 U.S.C. § 1692g(a)(1); (2) by giving a false impression of the character, amount, and legal status of the debt, 15 U.S.C. § 1692e(2)(A); (3) by engaging in unfair and unconscionable collection methods, 15 U.S.C. § 1692f; (4) by making threats to take unlawful legal action, 15 U.S.C. § 1692e(5); and (5) by using false or deceptive collection methods, 15 U.S.C. § 1692e(10).

[2] The Bourkes have not filed a motion to remand, but the Court may decline to exercise jurisdiction over this case and, *sua sponte*, remand the case insofar as complete diversity does not exist (due to the Hayes Defendants being state actors and parties), exclusive federal jurisdiction does not exist given the Bourkes' claims under the MFDCPA and 940 CMR 7.00 and there is no likelihood that the damages in this case will exceed $75,000.00.

## II.    STANDARD OF REVIEW

In *Occasio-Hernandez v. Fortuno-Burset* 640 F.3d 1, 11-13 (1st Cir. 2011), the First Circuit Court of Appeals discussed the evolving standard of review for motions brought pursuant to Rule 12(b)(6) and stated:

> "Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2). *See Iqbal,* 129 S.Ct. at 1949; *Twombly* 550 U.S. at 12*12 555, 127 S.Ct. 1955.  A "short and plain" statement needs only enough detail to provide a defendant with "`fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citing *Conley,* 355 U.S. at 47, 78 S.Ct. 99); *see also Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only `a short and plain statement. . . .' Specific facts are not necessary."). However, in order to "show" an entitlement to relief a complaint must contain enough factual material "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *See Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted); *see also Iqbal,* 129 S.Ct. at 1950. "Where a complaint pleads facts that are `merely consistent with' a defendant's liability, it `stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).  In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim.
>
> In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer "`legal conclusion[s] couched as . . . fact[]'" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 1949-50 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). A plaintiff is not entitled to "proceed perforce" by virtue of allegations that merely parrot the elements of the cause of action. *See id.* at 1950; *cf. Sanchez v. Pereira-Castillo,* 590 F.3d 31, 49 (1st Cir.2009) (disregarding as conclusory, under *Iqbal*'s first prong, a factual allegation that merely "[p]arrot[ed] our standard for supervisory liability in the context of Section 1983" in alleging that defendants had "failed to [supervise] with deliberate

indifference and/or reckless disregard of Plaintiff's federally protected rights"). Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible. *Iqbal,* 129 S.Ct. at 1951 ("To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). *But cf. Peñalbert-Rosa v. Fortuño-Burset,* 631 F.3d 592, 595 (1st Cir.2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.") (internal quotation marks omitted). If that factual content, so taken, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim has facial plausibility. *Iqbal,* 129 S.Ct. at 1949. "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir.2010) (Souter, J.).

Although evaluating the plausibility of a legal claim "requires the reviewing court to draw on its judicial experience and common sense," *Iqbal,* 129 S.Ct. at 1950, the court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955; *see also Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."). Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits; "a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (internal quotation marks omitted); *see also id.* at 563 n. 8, 127 S.Ct. 1955 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."). The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."

**III.    ARGUMENT**

1.)     <u>The FDCPA/MFDCPA claims with respect to Retained[3]</u>

Retained argues that they cannot be held "vicariously liable" for the acts of their debt collecting attorneys under the FDCPA or MFDCPA. Retained is mistaken. First, the Bourkes do not allege solely that Retained is vicariously liable for the acts of their attorneys – although they are. Indeed, the Bourkes' claims alleged as against Retained do not arise solely under the FDCPA, but also under the MFDCPA. The MFDCPA is the Massachusetts analog to the FDCPA. See 940 CMR 7.09. The Bourkes claim that Retained *themselves* are liable under the *MFDCPA* and the MA Attorney General's regulations at 940 CMR 7.00 as "creditors". See complaint at Para. 46-47. The MFDCPA defines a "creditor" as:

"*. . . any person and his agents, servants, employees, or attorneys engaged in collecting a debt owed or alleged to be owed to him by a debtor* and shall also include a buyer of delinquent debt who hires a third party or an attorney to collect such debt provided, however, that a person shall not be deemed to be engaged in collecting a debt, for the purpose of 940 CMR 7.00, if his activities are solely for the purpose of serving legal process on another person in connection with the judicial enforcement of a debt."

See 940 CMR 7.03.

Retained fits the definition of a "creditor" under the MFDCPA. Retained is a "person" "engaged in collecting a debt owed or alleged to be owed". Retained claimed – by and through its attorneys (also "creditors" as defined under the MFDCPA) – to be entitled to collect $100.00 a day in use and occupancy payments from the Bourkes under a February 21, 2013 "Notice to Vacate ("NTV") with nothing to substantiate that amount. A request for debt validation of this amount – despite being required by both the FDCPA

---

[3] The Hayes Defendants – represented by different counsel - have not answered the complaint, but have filed their own motion to dismiss on or about July 30, 2013.

and MFDCPA was ignored and not responded to.  See complaint at Para. 33-35.  See Ex. C at Ex. 3.  In fact, nowhere in their instant motion does Retained deny this.  Rather, Retained argues merely that they are not "debt collectors" under the FDCPA – which, even if it were true, is irrelevant since they fail to provide any support for the argument that they are not "creditors" under the MFDCPA.   The term "creditor" – and its definition under the MFDCPA - is clearly more or less synonymous with the term "debt collector" under the FDCPA so the distinction between "debt collectors" and "creditors" is substantively irrelevant since the FDCPA and MFDCPA are parallel and analogous statutes: a state version and a federal version.  The complaint references the FDCPA since it delineates various theories of liability more specifically, but the complaint also relies on the analogous state statute at G.L. c. 93, s. 49 and the state regulations at 940 CMR 7.00, *et seq*., to allege claims as against Defendants – and in particular for the purposes of the instant motion, Retained.

     Moreover, in alleging that the Bourkes fail to cite any action that *Retained* took against them, Retained apparently ignores Para's 39-42 of the complaint which specifically alleges that *Retained* – by and through their attorneys Hayes & Hayes – brought an eviction action in their name against the Bourkes in Nantucket District Court seeking therein to collect a purported debt from the Bourkes (alleged "use and occupancy" alleged to be unlawfully demanded in the NTV) and that the attempted collection of these moneys for *Retained* violated the FDCPA/MFDCPA and 940 CMR 7.00.  See summary process complaint and Bourkes' answer and affirmative defenses commenced by Retained and Hayes & Hayes attached hereto as Ex. A.[4]

---

[4] The Court may take judicial notice of these pleadings.  Fed. R. Evid. 201.

6

Nowhere in the definition of the term "creditor" under the MFDCPA and the regulations thereto under 940 CMR 7.00, *et seq.*, or the term "debt collector" under the FDCPA – is Retained immunized from actions – taken in their name by their attorneys – to attempt to collect a purported debt from the Bourkes by and through the actions identified in the complaint.[5]  It is true that Retained may have claims against their attorneys for their violation(s) of law (for which Retained may also be liable), but that's between those parties and has nothing to do with the Bourkes.

Retained argues that they are not "debt collectors" (under the FDCPA) because they are not "creditors" (under the MFDCPA).  The public land records – even if not specifically referenced in the complaint – show that Retained was the purported purchaser of the Bourkes' property at a foreclosure sale on March 21, 2011.  See Foreclosure Deed and related documents at Ex. B.[6]  Nowhere does Retained argue – or

---

[5] Under the FDCPA, "debt" is defined as:
"*any* obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligations have been reduced to judgment."

§ 1692a(5).

The definition of a "debt" under the MFDPCA is somewhat broader:

940 CMR 7.00 – the regulations related to the MFDCPA - define "debt" as " . . . money or its equivalent which is, or is alleged to be, more than 30 days past due and owing, unless a different period is agreed to by the debtor, under a single account as a result of a purchase, lease, or loan of goods, services, or real or personal property, for personal, family or household purposes or as a result of a loan of money which is obtained for personal, family or household purposes whether or not the obligation has been reduced to judgment."

For the purposes of the Bourkes' complaint, the definition of "debt" under the FDCPA and MFDCPA are, for all intents and purposes, identical.

[6] By referencing these documents, the Bourkes do not admit that such documents are

provide any support for - the proposition that it is "original creditor", "assignee" or a "mortgage servicing company" such that they could avoid liability under the FDCPA. See 15 U.S.C. 1692a(6).  This would all be irrelevant in any case since Retained meets the definition of a "creditor" under the MFDCPA.  See 940 CMR 7.03.  Even if the definition of "creditor" was somehow more restrictive under the FDCPA (excluding "creditors" from the definition of "debt collectors") than the MFDCPA (which does not define the term "debt collectors"), nowhere in their instant motion do the Defendants argue that the FDCPA's definition of "debt collector" preempts the MFDCPA's definition of the term "creditor".  Even if the Defendants made such an argument, it would be without merit.  The FDCPA excluded "creditors" from the definition of "debt collectors" only where a creditor seeks to enforce its own security interest.  15 U.S.C. § 1692(a)(6).  But that's not what Retained is doing in this case.  Retained is seeking to collect almost *two (2) years* worth of rent (despite having never made any "initial" demand for it as required by the FDCPA; nor bothering to respond to a lawful debt validation request) - *after* Retained (by and through the Hayes Defendants) purportedly bought the property at a foreclosure sale.  See Affidavit of Doneyn Bourke and exhbits thereto attached hereto as Ex. C.[7]

      Nothing in the FDCPA prohibits the definition of the term "creditor" under the MFDCPA from applying to Retained.  For the FDCPA and its parallel state analog, the

---

valid and binding or have legal effect – they have disputed the validity of these docments in their answer and defenses to the eviction action brought by Retained in Nantucket District Court.

[7] Insofar as Retained's motion makes reference(s) to the purported foreclosure sale of the Bourkes' property as fact – a fact which is disputed by the Bourkes - the Court may consider factual assertions outside the pleadings in this opposition.  See Retained's motion at p. 2

MFDCPA, to apply, only two (2) threshold criteria must be met. First, the defendants must qualify as "debt collectors" (FDCPA) or "creditors" (MFDCPA). *See* 15 U.S.C. § 1692a(6); 940 CMR 7.03. Second, the communication by the debt collectors must have been made "in connection with the collection of *any* debt." *Id.* § 1692c(a), (b); 940 CMR 7.03.

Retained readily admits that their attorneys are "debt collectors" - or "creditors" as defined under the FDCPA, the MFDCPA and the Attorney General's regulations at 940 CMR 7.00 all as alleged by the Bourkes in their complaint. Retained doesn't deny that they – Retained - have sought to collect $69,000.00 in "use and occupancy" payments from the Bourkes in a complaint (signed by Attorney Hayes and Hayes & Hayes) they filed to evict the Bourkes from their home in Nantucket District Court. See Bourkes' complaint at Para 39-41; see also Ex. A.

Retained however speciously attempts to deny that the demand in the NTV made to the Bourkes under a "Notice to Vacate" dated February 23, 2013 was an attempt to collect a "debt".[8] This assertion is meritless. The NTV stated specifically: "***You are liable*** for use and occupancy at [sic] $100.00 per day from April 1, 2011 . . . " Emphasis supplied. See ECF 9-1. The Bourkes alleged that the unequivocal demand for a stated amount of "use and occupancy" – that they were purportedly "liable" for - was a demand for a "debt". See Bourkes' complaint at Para. 15, 31; see also Ex. C. As recognition of

---

[8] A copy of the "Notice to Vacate" in question is attached to the "Declaration" of Defendant Stephen P. Hayes. See ECF Doc. 9; 9-1. The "Declaration" of Attorney Hayes provides no support or reasoning for the demand that the Bourkes "are liable" for use and occupancy of $100.00 per day. Indeed, it is unclear from the "Declaration" whether or not Attorney Hayes even sent the NTV. See "Declaration" at ECF 9 stating only that Attorney Hayes "signed" the NTV and that a copy of it was made by "someone with knowledge".

the nature of the "debt" demanded, the NTV had contained thereon a "mini-Miranda" warning pursuant to the FDCPA. See ECF 9-1. See also 15 U.S.C. § 1692e(11). Accordingly Retained, whose agents affirmed that the demand in the NTV was in fact a demand for a "debt" - are judicially estopped from arguing that the specific demand for $100.00 per day use and occupancy was not such a demand. See *Moore v. Mortgage Electronic Registration Systems, Inc., et al*, 848 F.Supp.2d 107, (2012) (citing *Pettway v. Harmon Law Offices, P.C.*, No. 03-cv-10932-RGS, 2005 WL 2365331, *5 & n. 10 (D. Mass. Sept. 27, 2005) (citing the selfsame debt collection language as grounds for concluding the challenged activity was in fact debt collecton); *In re Maxwell,* 281 B.R. 101, 119 (Bkrtcy.D.Mass.2002) (rejecting defendant's argument that it was not a debt collector because it sent plaintiff letters "in which it represented to her that it was acting as a debt collector under the FDCPA").

The FDCPA defines "debt", in pertinent part, to mean "any obligation or alleged obligation of a consumer to pay money." 15 U.S.C. § 1692a(5). See also *Arruda v. Sears, Roebuck & Co, et al*, 310 F.3d 13, 23 (1997). The definition of a "debt" under the MFDPCA is somewhat broader.[9] In this case, it is undisputed that the Bourkes are consumers under a residential loan – a fact not denied by Retained. See also Ex. C. The

---

[9] 940 CMR 7.00 – the regulations related to the MFDCPA - define **"debt" as:**

" . . . money or its equivalent which is, or is alleged to be, more than 30 days past due and owing, unless a different period is agreed to by the debtor, **under a single account as a result of a purchase, lease, or loan of goods, services, or real or personal property, for personal, family or household purposes or as a result of a loan of money which is obtained for personal, family or household purposes whether or not the obligation has been reduced to judgment.** (emphasis supplied). Clearly the demand for "use and occupancy" – arising as it did from the purported foreclosure of the Bourkes' home – is a "debt" under the MFDCPA. Pursuant to 940 CMR 7.10 a more "generous" or favorable (to a debtor) definition of the term "debt" under the MFDCPA is not preempted or displaced by the FDCPA.

demand under the NTV was followed by attempts to collect moneys alleged to be due from the Bourkes in Nantucket District Court.  The moneys demanded by Retained – if not "debts" in and of themselves - are or were at least "incidental" to the consumer transaction (the Bourkes' original loan with Emigrant Mortgage) and, therefore, covered by the FDCPA.  See *Andrews v. South Coast Legal Services, Inc., et al*, (D. Mass.) No. 07-10188-JGD (2008) citing *Shula v. Lawent,* 359 F.3d 489, 492 (7th Cir.2004).   If deemed "incidental" to the consumer debt, Retained may still be found liable under 15 U.S.C. § 1692f(1) of the FDCPA.  Retained would have the Court believe that the $100.00 per day amounts demanded from the Bourkes were not "yet due" (despite their efforts to collect it and assertions that they "were liable" for it) – and thus that no "debt' (as defined by the FDCPA or the MFDCPA) was demanded.

      Pursuant to G.L. c. 186, s. 13 and G.L. c. 239, s. 1 a tenancy can only be terminated (and summary process commenced) by and through a "Notice to Quit" or similar notice.  The NTV in this matter purports to be the required notice.  See ECF 9-1.  The Bourkes, as occupants in a property they were the purported mortgagors of, maintain status as "tenants at sufferance" after a foreclosure (if the foreclosure is ever shown to have been lawfully conducted).  "Tenants at sufferance" are "liable to pay rent for such time as they may occupy" a foreclosed premises.  G.L. c. 186, s. 3.  But logically (and practically), any "rent" due can only be set by a judge after a summary process hearing.  See *Swift* v. *Boyd,* 202 Mass. 26, 28 (1909) (in absence of agreement, a tenant at sufferance is liable for reasonable "rent" [i.e. use and occupancy]).  Retained – and its attorneys don't just get to make up whatever they want.   In the Bourkes' complaint, they alleged that the Defendants simply made up the $100.00 per day "use and occupancy"

11

demand for unfair, deceptive and misleading reasons (in violation of the FDCPA and MFDCPA) – i.e. in order to intimidate the Bourkes into leaving their home without going through the judicial eviction process.  See complaint at Para. 23, 28, 30-31, etc.  Nowhere does Retained even attempt to justify the $100.00 per day amount demanded from the Bourkes.  Without even waiting to see if the Bourkes had chosen to vacate, Retained sued the Bourkes not only 1.) for possession of their home but, 2.) for the moneys demanded under the NTV.

Retained states in their motion that "It is inaccurate to suggest that the defendants were demanding payment of that [$100.00 per day] amount."  This statement – and the entire position of Retained in this regard - is completely frivolous.  The NTV stated – not that use and occupancy payments in *some amount* (which could only legally be set by a court after a summary process hearing pursuant to G.L. c. 239) would be sought, but that **"You** [the Bourkes] **are liable"**.  See ECF 9-1.  How is that not a demand for payment?  Retained subsequently moved to collect these moneys by and through an action for possession and rent.  See Ex. A.  It is familiar to all that communications from debt collectors under the FDCPA are viewed under a "least sophisticated consumer" standard.[10]  In this case, there is nothing equivocal about the demand made by Retained (or the Hayes Defendants) – or the attempts to collect these moneys.  Any consumer presented with such a demand – stating **"You are liable"** for a $100.00 per day use and occupancy charge – would think that this was the amount they were going to be liable for.  That's what Doneyn Bourke thought.  See Ex. C.  And, true to their threats, Retained has sought to collect this money - $100 a day for almost two (2) years - from the Bourkes

---

[10] See *In re Maxwell*, supra.

in the eviction action.  The $100.00 per day demand in the NTV is further deceptive and misleading – and thus violative of the FDCPA - because nowhere in the NTV does it state that use and occupancy amounts can only be established by a court after hearing.  See ECF 9-1.

Retained's reliance on *Baer v. Harmon Law Offices, PC*, No. 3:08-30063-MAP, 2009 WL 102698 at *1 (D. Mass. Jan. 14, 2009) is unavailing.  The facts in *Baer* – an unpublished decision regarding a proposed class action – are not analogous to the instant case.  In *Baer*, the putative class plaintiffs were tenants in foreclosed properties who objected to the landlord's service of notices to quit with suggestions thereon that "use and occupancy" payments would be demanded if the landlord had to evict them in court proceedings.  The tenants in *Baer* alleged that demands for use and occupancy were violations of the FDCPA.  The Court found that such demands were not violations of the FDCPA.  Tenants in foreclosed properties are considered "tenants at will" under Massachusetts law.  See G.L. c. 186, s. 13A.  They plaintiffs in *Baer* were not, however, the former owner(s) of the properties in question – i.e. "tenants at sufferance" - as is the case here.  The *Baer* tenants were not the original obligors under any mortgage as the Bourkes are/were in the instant case.   Moreover, nowhere in *Baer* was it suggested that a specific, enumerated demand was made for use and occupancy payments as in the instant case – nor was it suggested that the demand was made for unfair, deceptive and misleading reasons – as in the instant case.  *Baer* is simply not applicable to the case at hand.  The only other case that Retained cites as support for their position that demanded use and occupancy payments are not "debts" under the FDCPA - is a case related to "condo fees".  See Retained's motion at p. 9.

To the extent that Retained attempts to argue that the definition of "debt" proscribed by the MFDCPA is "narrower" than that of the FDCPA, their arguments are unavailing and ultimately irrelevant. The requirement under the MFDCPA must be due for thirty (30) days before the MFDCPA applies to "debts" does not act as a bar to the Bourkes' MFDCPA claims. The demand for the $100.00 per day payments that the Bourkes would "be liable for" was alleged to be due after April 1, 2011). Retained proceeded with their efforts to collect this "debt" by filing a summary process summons and complaint in Nantucket District Court Docket No. 1288-SU-0013 on or about March 25, 2013 – *almost two years later*. See Ex. A. This was after Retained (and the Hayes Defendants) ignored a lawful request for debt validation and were warned – by a Chapter 93A demand letter on March 3, 2013[11] – of the violation(s) of the FDCPA and MFDCPA. See Ex. C at Ex. 4. Retained and the Hayes Defendants chose to ignore the request for debt validation and the Chapter 93A letter and Attorney Hayes signed the summary complaint on behalf of Retained seeking $69,000.00 on March 25, 2013. This was also more than thirty (30) days after the February 23, 2013 NTV.[12]

4.)   <u>The Chapter 93A claims against Retained.</u>

The complaint alleges sufficient facts that Retained violated Chapter 93A in this matter. The Bourkes have alleged that Chapter 93A liability attaches as a result of Retained's violations of the MFDCPA and the regulations thereto (see complaint; Count Two) and as a result of the failure to properly respond to the Bourkes' request for debt validation and to the March 3, 2013 c. 93A letter. The Chapter 93A claims against

---

[11] See ECF 9-2.
[12] If valid, the "Account of Use and Occupancy Due" that was filed with the summary process summons and complaint is inaccurate. See Ex. A; see Bourkes' complaint at Para. 42-43.

14

Retained pursuant to the MFDCPA, 940 CMR 7.07 are *per se* and derivative. If violations of the MFDCPA and 940 CMR 7.00, *et seq.*, are found, then violations of Chapter 93A must be found. See 940 CMR 7.07. Even if FDCPA and MFDCPA liability does not attach as a matter of law, c. 93A liability can still be found. See G.L. c. 93A, § 2[13]; 940 CMR 3.16(4); see also *Schubach v. Household Finance Corp.,* 375 Mass. 133, 137 (1978); *Okoye v. Bank of New York Mellon*, *et al* (D. Mass.) No. 10-11563-DPW (2011) (finding alleged RESPA violations – a consumer protection statute analogous to the FDCPA and MFDCPA – may form the basis of a violation of G.L. c. 93A).[14] A c. 93A demand letter was sent to Retained's attorneys prior to suit in this matter alleging the unfair and deceptive acts of the Hayes Defendants. See ECF 9-2. The Bourkes' c. 93A claims against Retained – are *per se* and derivative as pled and are properly before the Court.

## IV. CONCLUSION

For the foregoing reasons, the Bourkes respectfully requests that this Honorable Court:

---

[13] "Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c. 93A § 2 if:

(1) It is oppressive or otherwise unconscionable in any respect; . . .

(3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection."

[14] " . . . courts have denied motions to dismiss [such] Chapter 93A claims, noting that an act or practice violates Chapter 93A if it "violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2." 940 C.M.R. § 3.16(4). Such courts have assumed or found that RESPA is a consumer-protection statute within the meaning of § 3.16(4) and have permitted cases alleging violations of RESPA to proceed beyond the motion-to-dismiss stage. *See Martin v. TD Bank, N.A.,* No. 10-10409, 2011 WL 1599692, at *2 (D. Mass. Apr. 27, 2011) (Zobel, J.); *McDermott,* 2009 WL 1298346, at *3; *In re Holland,* No. 06-1418, 2008 WL 4809493, at *12 (Bankr. D. Mass. Oct. 30, 2008) (Feeney, Bankr. J.)."

1.) DENY Retained's Motion to Dismiss;

2.) AWARD the Bourkes their costs and attorney's fees in defending the motion;

3.) If the Court is inclined to ALLOW Retained's motion to dismiss, GRANT the Bourkes thirty (30) days to AMEND their complaint; and

4.) GRANT such other and further relief as this Court deems meet and just.

DATED:      July 31, 2013
            Nantucket, MA

Martin and Doneyn Bourke
By their attorney,

/s/ Jamie Ranney, Esq.
_____
Jamie Ranney, Esq. BBO#643379
Jamie Ranney, PC
4 Thirty Acres Lane
Nantucket, MA 02554
508-228-9224 (tel)
508-815-1318 (efax)
jamie@nantucketlaw.pro


CERTIFICATE OF SERVICE

I, Jamie Ranney, Esq. do hereby certify that the documents referenced above and filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 1, 2013

/s/ Jamie Ranney, Esq.
_____
Jamie Ranney, Esq. BBO#643379
Jamie Ranney, PC
4 Thirty Acres Lane
Nantucket, MA 02554
508-228-9224 (tel)
508-815-1318 (efax)
jamie@nantucketlaw.pro