lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: [signature]

123757

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: [illegible]

123707

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials:

May. 9. 2008 11:10AM No. 0816 P. 22

123767

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: [illegible]

-6(MA) (0010) Page 8 of 15 Form 3022 1/01

123757

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: [signature]

129757

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: [illegible]

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

May. 9. 2008 11:13AM No. 0816 P. 27

129757

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____________________ (Seal)
Doneyn Boyrko -Borrower

_____________________ (Seal)
William Hayward, Sr. -Borrower

_____________________ (Seal) -Borrower

_____________________ (Seal) -Borrower

_____________________ (Seal) -Borrower

_____________________ (Seal) -Borrower

_____________________ (Seal) -Borrower

_____________________ (Seal) -Borrower

-6(MA) (0401) Page 14 of 15 Form 3022 1/01

123757

COMMONWEALTH OF MASSACHUSETTS, Nantucket County ss

On this 17th day of April 2008, before me, the undersigned notary public, personally appeared Doneyn Bourke and William Hayward, SR.

proved to me through satisfactory evidence of identification, which was/were to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires:
(Seal)

PAUL S. JENSEN NOTARY PUBLIC COMMONWEALTH OF MASSACHUSETTS MY COMMISSION EXPIRES JUNE 22, 2014

Notary Public

123707

Exhibit A
(6 Arkansas Avenue, Nantucket, Massachusetts)

Those parcels of land with all buildings and improvements thereon, together now known and numbered 6 Arkansas Avenue, Nantucket, Nantucket County, Massachusetts, being now fully described as follows:

Parcel One

Lot 869 as shown on Plan No. 3092-110 drawn by John 3. Shugrue, Inc., Surveyors, dated August 31, 1989, filed with Certificate of Title No. 14,376 at the Nantucket Registry District of the Land Court.

Parcel Two

Lot 878 as shown on Plan No. 3092-112, drawn by John Shugrue, Inc., Surveyors, dated February 26, 1992 and filed with Certificate of Title No. 14,682 at the Nantucket Registry District of the Land Court.

For title see Certificate of Title No. 22,157.

123767

# RIDER TO MORTGAGE

25. If a change in applicable law would make any provision of the Note or this Mortgage unenforceable, Lender may require immediate payment in full of all sums secured by this Mortgage as that phrase is defined in Paragraph 22 of this Mortgage. If Lender requires immediate payment in full under this Paragraph 25, Lender will take steps and may act as specified in the last paragraph of Paragraph 18.

26. If any fixture attached to the Property is removed or damaged, I will replace it immediately.

27. Lender may require immediate payment in full, as that phrase is defined in Paragraph 22 of this Mortgage within thirty (30) days after Lender sends me a notice informing me of the passage of any new law requiring Lender to pay a tax or assessment because Lender is the holder of the Note and this Mortgage. If Lender requires immediate payment in full under this Paragraph 27, Lender will take the steps and may act as specified in the last paragraph of Paragraph 18 herein, notwithstanding anything herein contained to the contrary.

28. I agree to correct any violation of any law affecting the Property within ninety (90) days after I receive notice that any governmental body has determined the existence of such violation.

29. If Lender starts a foreclosure action: a) Lender may ask the court to appoint, without prior notice to me, and without reference to the value of the property, a Receiver to enter and take possession of the Property, to look after the Property and to collect rents from any tenants on the Property; b) If there is a sale at foreclosure, I agree that the Property may be sold in one parcel, or more than one parcel. Lender may give the Note and this Mortgage to an attorney to foreclose or to collect money I owe under the Note and this Mortgage, or to remedy any of the promises I have not kept. If Lender does so, it may add all its legal fees, costs and other expenses to the amount I owe, together with interest at the rate specified in the Note.

30. I will not collect more than one (1) month's rent in advance from any tenant or occupant without Lender's written consent.

31. Any claim, demand or charge made against property in connection with an obligation that has not been fulfilled is known as a "lien". Notwithstanding the provisions of Paragraph 4 of this Mortgage, I agree to pay or satisfy all liens against the property that may be superior to all or a part of the lien of this Mortgage within thirty (30) days after Lender sends to me a written notice of the existence of such a lien.

32. I promise to furnish Lender with any documents or information which Lender may require in connection with making a change in the interest rate under the Note secured by this Mortgage, and I also promise to sign any document which Lender may require me to sign in connection with any such interest rate change.

33. The Lender may, after default, at its option, if so permitted by law, foreclose the mortgage so that the property may be sold subject to the mortgage given as security herein.

34. The Borrower shall not claim or demand or be entitled to receive any credit or credits on account of the principal or interest due or to grow due on this mortgage or the obligation intended to be secured hereby for taxes or other charges assessed against the Property or any part thereof.

35. I represent and warrant that the Property will be used as my primary residence, and I acknowledge that the Lender has relied on this representation and warranty in accepting the Note and this Mortgage at the Initial Interest Rate and terms of interest rate adjustments set forth in the Note, and in issuing the commitment for the loan secured by this Mortgage at the commitment and/or loan origination fee set forth in the commitment. Notwithstanding the provisions of Paragraph 8 of this Mortgage, in the event the Lender determines that I am not using the premises as my primary residence at any time starting 30 days after the date of this Mortgage continuing to the first anniversary of this Mortgage, the Initial Interest Rate set forth in the Note will be increased by one percent (1%) per annum and the interest rate at each interest change date will be increased by an additional one percent (1%) above the adjusted interest rate calculated as set forth in the Note and Adjustable Rate Rider hereto; said changes to be applied (a) retroactively from the date of this Mortgage to all unpaid and any previously paid principal, and (b) throughout the term of this Mortgage. In addition, an additional commitment fee of one percent (1%) of the original principal amount of the Loan shall be immediately due and payable. Failure by me to pay any amount due under this Paragraph within fifteen (15) days after notice thereof will give the Lender the right to require immediate payment in full under Paragraph 22 hereof.

36. In the event that I am also obtaining a bridge loan from Lender, covering the premises ____________________, any event of default under the loan documents for said bridge loan shall also be an event of default hereunder and shall entitle Lender to require immediate payment in full as set forth in Paragraph 22 hereof. Any default under any other loan of any kind that I may have with Lender now or in the future will also be an event of default under this Mortgage and the Note. Lender shall have a lien on any of my deposit balances now or hereafter on deposit with Lender, together with full authority to set off such deposit balances against the amounts due under this Mortgage and the Note, and Lender may at any time, without notice, after any event of default under this Mortgage or the Note, before or after any acceleration of the Note and this Mortgage, set off and apply any deposits I have with Lender or other debts owed to me by Lender against any monthly payments or other amounts due under this Mortgage or the Note.

123787

37. Notwithstanding anything to the contrary contained in Paragraph 23 of this Mortgage, Lender may charge a reasonable fee for processing a payment of all amounts due under the Note and this Mortgage.

38. I agree that Paragraph 19 of this Mortgage is hereby deleted, and I shall have no right to reinstate the Note and this Mortgage after acceleration thereof under any provision of this Mortgage. I further agree that notwithstanding anything contained in Paragraph 22 I shall have no right to receive a notice of a right to reinstate after acceleration of this Mortgage.

39. Notwithstanding Paragraph 35 or any other provision contained in this Mortgage, if the Property is a 2 to 4 family residence, I will occupy at least one unit on the Property in compliance with Paragraph 6 of this Mortgage.

40. If Lender requires immediate payment in full or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments including overdue rental payments, directly from the tenants; (B) enter on and take possession of the Property (C) manage the Property; and (D) sign, cancel and change leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 40, I agree that the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Mortgage. I will pay to Lender reasonable rent from the date of recording any foreclosure deed for as long as I occupy the Property. However, this does not give me the right to occupy the Property. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 40 will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the sums secured. The costs of managing the property may include the receiver's fees, reasonable attorneys' fees and the cost of any necessary bonds.

41. In the event of any assignment or transfer of the Note and this Mortgage to the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, the provisions of Paragraphs 25 through 40 herein shall, upon such assignment or transfer, cease to be operative and shall be null and void.

By signing this Rider, I agree to all of the above

Borrower

Borrower

Borrower

Borrower

123767

(E) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(F) Limitations on Interest Rate Adjustments
The interest rate I am required to pay at the first Change Date will not be greater than 14.125 % or less than 14.125 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 14.125 %.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

[signature] (Seal)
Donayn Bourke - Borrower -

[signature] (Seal)
William Hayward, Sr. - Borrower -

(Seal)
- Borrower -

(Seal)
- Borrower -

123757

LOAN ID: [redacted]

BORROWER(S): Donnyn Bourke
William Maynard, Jr.

RE: 6 ARKANSAS AVENUE, NANTUCKET, MASSACHUSETTS 02554-2602

RIDER "B"

In addition to any other requirements specified in the Commitment, Note, and/or Security Instrument, Borrower will certify to Lender (at, or prior to, closing) by means of a notarized affidavit, that they will occupy the above referenced premises. Furthermore, the above referenced premises will not be rented or subleased, as the case, may be during the first 3 years of the loan term.

Failure to abide by this agreement shall be deemed an event of default under the Note and Security Instrument and the Lender may exercise its rights including, but not limited to, accelerating the unpaid balance of the loan and/or imposition of the default interest rate.

Lender may, at its sole option, choose to inspect the premises and/or require documentation in support owner occupancy.

Accepted and Agreed to: [signature] Date: 4/18/08
Donnyn Bourke

Accepted and Agreed to: [signature] Date: 4/18/08
William Maynard, Jr.

Accepted and Agreed to: ______________________ Date: __________

Accepted and Agreed to: ______________________ Date: __________

4/16/2008 4:19:18 PM

123757

LOAN ID: [redacted]

BORROWER(S): Doneyn Bourke
William Hayward, Sr.

RIDER "5"

NOTWITHSTANDING anything to the contrary stipulated in the Commitment, Note and/or Security Instrument, Lender shall permit a second mortgage by "Any Lender" up to $210,000 (subordinated only to Emigrant's 1st lien associated with Loan Number [illegible] ).

Accepted and Agreed to: [signature] Date: 4/17/08
Doneyn Bourke

Accepted and Agreed to: [signature] Date: 4/17/08
William Hayward, Sr.

Accepted and Agreed to: ______________________ Date: __________

Accepted and Agreed to: ______________________ Date: __________

4/15/2008 4:19:36 PM

May. 9. 2008 11:15AM    No. 0816 P. 36

123757

Doc Num 00123757

NANTUCKET COUNTY LAND COURT

REGISTRY DISTRICT

** RECEIVED FOR REGISTRATION **

On: Apr 22,2008 at 11:30A

Document Fee: 175.00 Rec Total: $[illegible]

CERTIFICATE No: 22157



COPY

JAMIE RANNEY PC

Ex. 3

4 THIRTY ACRES LANE
NANTUCKET, MA 02554
508.228.9224 (PHONE)/ 508.228.4752 (FAX)
JAMIE@NANTUCKETLAW.PRO

January 22, 2011

**VIA REGULAR USPS and CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Emigrant Mortgage Company, Inc. 7010 1060 0002 3501 0619
7 Westchester Plaza
Elmsford, NY 10523

7010 1060 0002 3501 0619

| RE: | | |
|---|---|---|
| | **Borrower(s):** | **Doneyn Bourke and William Hayward, Sr.** |
| | **Loan No.:** | **4896560** |
| | **MIN No.:** | **N/A** |
| | **Property Address:** | **6 Arkansas Ave., Nantucket, MA 02554** |
| | **Loan Servicer:** | **Emigrant Mortgage Company, Inc.** |
| | **Original Mortgagee:** | **Same** |
| | **Purported Current Mortgagee:** | **Same** |
| | **Purported Note Holder:** | **Unknown** |
| | **Date of Mortgage:** | **April 17, 2008** |

## NOTICE OF RESCISSION

Dear Sir or Madam:

Please be advised that this office represents the borrowers listed above.

Pursuant to 15 U.S.C. 1601 (the federal "Truth in Lending Act"; "TILA") and its implementing regulations at 12 CFR 226 ("Regulation Z") as well as M.G.L. c. 140D (the "Massachusetts Consumer Credit Cost Disclosure Act"; "MCCCDA"; section 10) and its implementing regulations at 209 CMR 32.00, please accept this letter as a NOTICE OF RESCISSION of my clients' loan as referenced above. In addition, my clients claim the common law right of RECOUPMENT hereunder for moneys paid to Emigrant before, during and after this loan was consummated.

As reasons therefore, a forensic examination of my clients' loan transaction shows numerous violations of state and federal law in the underwriting and origination, processing, closing and servicing of my clients' loan entitling them to rescind the loan and seek recoupment of the moneys paid under this loan under applicable law.

As a preliminary matter it should be noted that Emigrant failed to provide documents requested by my clients' duly appointed forensic mortgage examiner pursuant to a "Qualified Written Request" ("QWR") under the Real Estate Settlement Procedures Act ("RESPA") at 12 U.S.C. 2501(1)(e). Documents not provided by Emigrant in response to valid request include but are not limited to:

- Initial Truth-in-Lending Statement;
- Initial Good Faith Estimates;
- Any all Federal & state disclosures that required the borrower(s) signature;
- Any and all income documents provided by borrower(s) to corroborate their income;
- Certified Copy of Original Assignment of Mortgage and any subsequent Assignments of Mortgage;
- Location of Original Mortgage Note and original Executed Mortgage;
- Any and all Trust Agreements between the closing lender and/or any other lender or funding source and party or parties who could claim an interest instant in the subject loan and underlying Note and Mortgage;
- Any Pooling Agreements between the closing lender and/or any other lender or funding source and party or parties who could claim an interest instant in the subject loan and underlying Note and Mortgage;
- Any Servicing Agreements between the closing lender and/or any other lender or funding source and party or parties who could claim an interest instant in the subject loan and underlying Note and Mortgage
- Any Master Purchasing Agreements;
- Any Special Purpose Vehicle or SPE Agreements;
- Copies of the Executed Pooling and Servicing Agreements Dated for Asset Backed Pass-Through Certificate Series;
- The exact name of the Asset Backed Security Trust that this Mortgage and Note was purportedly sold into;
- The name of the Trustee of the asset-backed mortgage Security trust or other party which bought this Mortgage;
- Copies of any modification offers or agreements that may have been offered, rejected or agreed to between the borrower and the servicing agent;
- Evidence as to the identity of the Owner and Holder of the borrower's Note

A failure to provide the requested documentation – where such documentation is required to show proper ownership of my client's loan - is a violation of RESPA and is also alleged to be a violation of M.G.L. c. 93A (the MA "Consumer Protection Act") entitling my clients to treble damages plus their attorney's fees.

Violations of state and federal law entitling my clients to the remedy of rescission and recoupment include but are not limited to the following:

1.) A failure to provide my clients with a preliminary Truth-in-Lending (TIL) disclosure;
2.) A failure to provide my clients with a signed copy of her/their loan application within 72 hours of signing;
3.) A failure to provide a preliminary HUD-1 settlement statement;
4.) A failure to provide applicable worksheets, handbooks or other explanatory materials;

5.) A failure to provide an accurate TIL disclosure. The TIL disclosure and the terms of the loan given to my client are contradictory. To wit: the loan as consummated is a 30 year loan locked in at 9.125% for five (5) years which thereafter recasts every twelve (12) months at the LIBOR plus 3.375%. The TIL disclosure however shows that the interest rate on the loan is locked for 25 years after the fifth year. In addition to the obvious discrepancies on the face of the documents, this results in an understatement of the finance charge on the TIL disclosure that far exceeds any permissible tolerance. Furthermore any payment after recast is impossible to predict 60 months in the future given the speculative nature of predicting the LOBOR five (5) years in advance, rendering the TIL disclosure useless in this case.

6.) The client(s) executed, over a period of months, multiple loan applications (at least three (3)) all of which state different terms such as interest rate(s), payments and other terms. It is impossible to determine which application was ultimately used to originate this loan.

7.) There are a series of unlawful provisions contained within the mortgage that void the mortgage as a matter of law. They include but are not limited to: a.) granting the Lender the right to foreclose if there are "any changes in federal or state law" governing the mortgage (Para. 25); b.) requirement that the mortgage be paid in full within thirty (30) days if there are any "new taxes or assessments" incurred by Lender as a result of the ownership of the borrower's note and mortgage (Para. 26); c.) granting the Lender the right to have a "Receiver" take possession of the premises is the Lender starts foreclosure proceedings. None of these provisions were disclosed to the borrowers prior to closing and in any case are all void as a matter of public policy.

8.) The loan violates the requirements of M.G.L. c. 183, s. 28C and the enabling regulations at 209 CMR 53.00 and there was no showing from the Lender that the loan was made in accordance with the "borrower's interest" as required by law in this refinance transaction.

9.) The borrower(s) did not receive a statutory Notice of Right to Cancel at closing.

10.)    As otherwise may be shown at any trial on this matter.

In accordance with the foregoing therefore, you may consider this letter a formal Notice of Rescission of my clients' loan as identified above.

You are advised that pursuant to this rescission, Emigrant's security interest under the mortgage has been voided as a matter of law and no non-judicial power of sale now exists under the void mortgage. You are requested to immediately cancel the pending foreclosure sale (scheduled for January 27, 2011) as Emigrant no longer has a security interest in the property. A failure to do so may result in significant additional liability to Emigrant.

Emigrant has twenty (20) days from the date of this letter to acknowledge the rescission demanded herein and to return all moneys paid by my clients under this loan in accordance with the statute(s) cited above.

You are also advised that my clients will seek the recovery of damages, costs, and reasonable legal fees for failure to comply with the rescission demand herein. My clients also reserve their rights to any other damages available to my clients pursuant to M.G.L. c. 93A, the Attorney General's Regulations of the Commonwealth of Massachusetts and under any other state or federal law or regulation applicable to this matter.

Moreover, to the extent that Emigrant intends to invoke a defense of any claims premised on the expiration of the statute of limitations under any law or regulation applicable to this matter, you are hereby put on notice that my clients reserve the right to assert any such claims upon discovery of the violations of law identified as a result of their investigation into the origination, servicing and foreclosure of this loan.

Should you have any other questions please do not hesitate to contact me.

Sincerely,

Jamie Ranney, Esq.
Attorney for Bourke, Hayward
JTR:dat
cc: client; file





4 THIRTY ACRES LANE
NANTUCKET, MA 02554
508.228.9224 (PHONE)/ 508.815.1318 (EFAX)
JAMIE@NANTUCKETLAW.PRO

March 3, 2013

**VIA FED EX TRACKING NO. 8017 5901 8159**
Stephen P. Hayes, Esq.
Hayes and Hayes Attorneys at Law, P.C.
23 East Main Street
West Yarmouth, MA 02673

**RE:**

Dear Attorney Hayes:

This office represents Doneyn and Martin Bourke.

I am in receipt of a purported "Notice to Vacate" dated February 21, 2013 from your office. A copy of this communication is enclosed. Make no further communication(s) with my clients. Direct all future communications to this office.

Please be advised that any debt referenced in your letter is disputed. You are advised that any purported foreclosure in this matter is/was unlawful and no valid foreclosure of the Bourke's property ever took place. I'm sure you are aware that the loan was lawfully rescinded on January 11, 2011. No valid response to the rescission demand was ever received. Accordingly, pursuant to the Massachusetts version of the federal "Truth in Lending Act" at 15 U.S.C. s. 1601, *et seq.*, the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA") at G.L. c. 140D, the loan was rescinded as a matter of law on January 31, 2011 and any security under any mortgage was voided as of that date.

Notwithstanding the foregoing, in your letter dated February 23, 2013 you advise that my clients "are liable" for a purported "use and occupancy" value of $100.00 per day for the premises "after April 1, 2011".

Pursuant to the FDCPA, G.L. c. 93, s. 49 and 940 CMR 7.00, please provide validation of the debt you claim is owed under your February 23, 2013 letter and provide a complete breakdown – together with copies of all invoices and any other documentation - of any and all moneys you/your clients claim my clients owe in this matter.

Please also advise what investigation you and your firm made into this matter to "confirm" that a foreclosure lawfully took place and the legal basis for the $100 per diem which you set in your "notice" as a "debt" you are entitled to collect from my clients.

You include, in your "notice" – language that purports to give "mini-Miranda" warning(s) under the Fair Debt Collection Practices Act ("FDCPA) acknowledging therefore that your February 23, 2013 communication is, in fact a debt collection letter and subject to regulation under the FDCPA and its state analog, G.L. c. 93, s. 49 and the regulations thereto at 940 CMR 7.00.

Among other illegal items in your letter (detailed below), your unilateral determination of a "use and occupancy" value for the premises, represented in your letter to my client(s) as an undisputed fact – even if the "March 21, 2011" foreclosure was valid (which it was not) - is unlawful and violates the FDCPA, G.L. c. 93, s. 49 and 940 CMR 7.00.

This office has represented the Bourkes since 2010 and the purported mortgagee's counsel during that time – Shechtman, Halperin and Savage ("SHS") – were made repeatedly made aware of this.  The last communication with SHS was March 3, 2011 when this office demanded notice of any continued foreclosure sale in writing.  SHS never replied to this communication and no notices of any postponed/continued sale date were ever received by this office as required by G.L. c. 244, s. 14.

Accordingly, both you personally and your firm may consider this letter a "thirty day demand letter" pursuant to G.L. c. 93A (the Consumer Protection Act).   My clients, as borrowers, are "consumers" under Chapter 93A.  You and your firm are "debt collectors" as that term is defined by the FDCPA and further are considered "creditor(s)" under the applicable Attorney General's Regulations at 940 CMR 7.03.

The unfair and deceptive acts complained of at this time are as follows:

1.) Your letter fails to include language required by 940 CMR 7.04(1)(i);

2.) Your letter – in demanding a debt not yet due and/or characterizing a debt as due when none is due – violates 15 U.S.C. s. 1692e(2) and 940 CMR 7.07(2), (8), (16);

3.) Your letter fails to identify office hours as required by 940 CMR 7.07(22);

4.) Your letter is an unlawful attempt to confirm a purported "use and occupation" amount due when you know or should have known that such an amount can only be set by a court, thus violating 15 U.S.C. s. 1692e(5) and 940 CMR 7.07(24);

5.) Your letter contains threats to take legal action for "damages" when no such "damages" can be claimed and also that my client is entitled to defend any eviction in accordance with the law, thus violating 940 CMR 7.04(1)(b)(2) and (3);

6.) Your letter violates 15 U.S.C. s. 1692e(10) (false and deceptive means to collect a debt); 15 U.S.C. 1692e(12) (debt allegedly owed to innocent purchasers for value); 15 U.S.C. 1692f (unfair and deceptive means to attempt to collect an alleged debt); 15 U.S.C. 1692f(1) (attempt to collect a debt not authorized by law); 15 U.S.C. 1692g(a)(3) (failure

to list total amount of debt allegedly due); 15 U.S.C. 1692g(a)(5) (failure to state that name and address of original creditor will be provided);

7.) As otherwise may be shown at any trial on this matter.

Although not required to assert a claim under the FDCPA, G.L. c. 93, s. 49 or 940 CMR 7.00, as a result of your unlawful communication, my clients have suffered actual damages. Their actual damages include, but are not limited to having to take time off from work to confer with counsel, expending legal fees and incurring costs such as time on the phone, sending emails, paying for postage other expenses, spending money on gas to drive to and from their attorney's office, etc. In addition, the actual damages suffered by my clients include emotional distress manifested by feelings of fear, anger, frustration, despair and depression as well as objective physical symptoms, including but not limited to sleeplessness, nervousness, anxiety, dread, nausea, headaches and other symptoms that may be proven at trial.

Demand is made for the payment of a.) $500.00 in actual damages, b.) $1,000.00 for your violations of 15 U.S.C. 1692, *et* seq., G.L. c. 93, s. 49 and the regulations promulgated thereto; plus c.) $20,000.00 in emotional distress damages. Pursuant to G.L. c. 93A, this $21,500.00 amount is trebled for your willful and knowing conduct in this matter since you are presumed to know the debt collection laws and regulations of the United States and this Commonwealth.

Accordingly, the total demand hereunder is $64,500.00 plus my client's attorney's fees.

It is worth noting that in addition to incurring liability for your firm, that you may be held individually liable for the violations of law alleged herein. See *Som v. Daniels Law Offices, PC* (D. Mass) 573 F.Supp.3d 349, 356 (2008): A "high ranking employee, executive or director of a collection agency may fit within the statutory definition of a debt collector." *Musso*, 194 F.R.D. at 46 (citing *Teng v. Metropolitan Retail Recovery, Inc.*, 851 F.Supp. 61, 67 (E.D.N.Y. 1994); *Ditty v. CheckRite, Ltd.*, 973 F.Supp. 1320, 133637 (D.Utah 1997)); *Brumbelow v. Law Offices of Bennett and Deloney, P.C.*, 372 F.Supp.2d 615, 622 (D.Utah 2005); *Ditty*, 973 F.Supp. at 13361337 (supervisor of firm's collection activities and author of unlawful collection letters personally liable under the FDCPA); *Egli v. Bass*, 1998 WL 560270 *1, *2 (N.D.Ill. 1998); *Pope v. Vogel*, 1998 WL 111576 *1, *56 (N.D.Ill. 1998).

You have thirty (30) days to provide a reasonable offer of settlement.

**You are hereby (re)notified that my clients do not and will not openly or peaceably permit any attorney(s), attorney(s)-in-fact, auctioneer(s), property inspector(s), agent(s), officer(s), employee(s), and/or contractor(s) hired, retained, employed, and/or authorized by the lender(s), loan servicer(s), or anyone or any entity purporting to hold title to the premises to enter the property for any purpose, including without limitation to enter pursuant to M.G.L. c. 244 §§1 *et seq.*, before, during or after any purported foreclosure process. Any attempted entry made or to be made shall be not be made openly, not be made peaceably, and shall be – and is - fully and completely objected to and opposed for all purposes.**

**You are also notified pursuant to M.G.L. c. 266, s. 120 – Massachusetts' "NO TRESPASS" statute – that any agents, officers, employees, subcontractors, or others purporting to act with respect to the lender or servicer of our clients' loan are forbidden from trespassing on**

**our clients' property as identified herein for any reason unless prior permission is granted therefore. This includes any property inspectors hired on behalf of any party claiming legal title to the premises who will be subject to arrest and/or civil liability for going onto the property without permission.**

**YOU ARE ADVISED TO IMMEDAITELY NOTIFY YOUR EMPLOYER(S), CLIENT(S) AND ANY AND ALL AGENTS, OFFICERS, EMPLOYEES, SUBCONTRACTORS, OR OTHERS PURPORTING TO ACT WITH RESPECT TO THE LENDER OR SERVICER OF OUR CLIENTS' LOAN OF THIS NO TRESPASS NOTICE.**

Sincerely,

Jamie Ranney, Esq.
Attorney for Bourke
JTR:dat
cc: clients; file;