UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 13-11537-RWZ


MARTIN BOURKE and DONEYN BOURKE

v.

RETAINED REALTY, INC., STEVEN P. HAYES,
and HAYES & HAYES, ATTORNEYS AT LAW, PC


MEMORANDUM OF DECISION

March 7, 2014


ZOBEL, D.J.

    Plaintiffs Martin and Doneyn Bourke allege that when defendants Retained

Realty, Inc., Steven P.  Hayes, and the law firm for which he works, Hayes & Hayes,

Attorneys at Law, PC, sent plaintiffs a "Notice to Vacate" ("NTV") letter warning that

they would seek a $100 per day "use and occupation" fee if plaintiffs did not state their

intention to vacate their foreclosed-upon home, defendants violated (1) the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Massachusetts

Fair Debt Collection Practices Act ("MFDCPA"), Mass. Gen. L. ch. 93, § 49 and

corresponding regulations, 940 C.M.R. § 7.00 et seq. (Count I); and (2) Massachusetts

General Laws Chapter 93A, §§ 2 and 9.  Defendants move to dismiss (Docket ## 7,

13).  Fed. R. Civ. P. 12(b)(6).  Their motions are ALLOWED.

**I.    Background**

    Plaintiffs owned a home on Arkansas Avenue in Nantucket, Massachusetts.

Compl. ¶ 1.  Their home was foreclosed upon in March 2011.[1]  Id. ¶ 8.  By letter dated

February 21, 2013, Stephen P. Hayes, an attorney at Hayes & Hayes and counsel for

Retained Realty, notified plaintiffs that Retained Realty was the highest bidder at a

public auction of the premises and now owned it.  Docket # 9-1.[2]   The letter stated:

> Your current use and occupation of the premises is against the right of
> our client who holds the absolute title to, and has the right to exclusive
> physical possession of, the property due to the said foreclosure.  You are
> liable for use and occupation at $100.00 per day from April 1, 2011, the
> first day of the month after the foreclosure sale date of March 21, 2011.
> Please indicate to this office on or before February 28, 2013 whether you
> intend to voluntarily vacate the premises and if so when you intend to do
> so.  Should you fail to respond we will have no recourse but to pursue
> immediate legal action for possession and damages for your use and
> occupation of the premises.

Id.  The Bourkes did not vacate, and on March 25, 2013, Hayes filed a summary

process eviction in Nantucket District Court seeking $69,000 in "use and occupation"

fees.[3]  Compl. ¶¶ 39-42.

## II.   Legal Standard

A complaint must contain a "short and plain statement of the claim showing that

---

[1]Plaintiffs dispute the lawfulness of the foreclosure.  Compl. ¶ 9.

[2]Plaintiffs do not attach the letter to the complaint.  Ordinarily, I may not consider documents outside the complaint on a Rule 12(b)(6) motion, unless I convert the motion into one for summary judgment.  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  A narrow exception exists, however, "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  Id. Here, plaintiffs' cause of action is based entirely on the NTV letter.  Plaintiffs also do not dispute the accuracy of the NTV letter, which defendant Hayes attached to the declaration accompanying his motion to dismiss.  They also refer repeatedly to the NTV letter in the complaint.  Given these circumstances, it is appropriate to consider the NTV letter along with defendants' motions.  See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 34 (1st Cir. 2001) ("Under First Circuit precedent, when 'a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss." (quoting Beddall v. State St. Bank & Trust Co., 137 F.2d 12, 17 (1st Cir. 1998))).

[3]Plaintiffs do not challenge the eviction proceeding in the complaint.

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The court accepts as true all factual allegations contained in the complaint, but not legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  If the complaint fails to state a plausible claim upon which relief can be granted, it must be dismissed.  Id.

III.   **Analysis**

A.   **Count I: FDCPA and MFDCPA**

Plaintiffs allege that the $100 per day demand in the NTV letter violates the FDCPA and the MFDCPA.  They contend the $100 figure has no basis in law and was used to intimidate plaintiffs into leaving their home.  Pls.' Mem. in Opp., Docket # 16, at 12.  Defendants move to dismiss on the ground that the NTV letter did not attempt to collect a "debt" because the FDCPA and MFDCPA do not apply to demands for future payment, and the "use and occupancy" fees were "not alleged to be due at the time Attorney Hayes sent the [NTV letter]."  Def.'s Mem. in Supp., Docket # 8, at 7.

To survive a motion to dismiss in an FDCPA case, "a complaint must allege a scenario involving the collection (or attempted collection) of a debt."  Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 23 (1st Cir. 2002).  A debt, according to the FDCPA, is "any obligation or alleged obligation of a consumer to pay money."  15 U.S.C. § 1692a(5).  The MFDCPA defines a debt as "money or its equivalent which is, or is alleged to be, more than 30 days past due and owing."  940 C.M.R. § 7.03.  Each definition requires "at least the existence or alleged existence of an obligation to pay money."  Arruda, 310 F.3d at 23.

Two courts in this district have recently concluded that language similar to the

language of the NTV letter refers to a future obligation to pay and is therefore not actionable under the FDCPA. O'Connor v. Nantucket Bank, Civil No. 13-11350-PBS, 2014 WL 198347, at *4 (D. Mass. Jan. 13, 2014)[4]; Baer v. Harmon Law Offices, P.C., C.A. No. 08-30063-MAP, 2009 WL 102698, at *1 (D. Mass. Jan. 14, 2009). In O'Connor, Chief Judge Saris concluded that an NTV letter dated April 13, 2012, which stated that the plaintiffs would incur liability for use and occupancy fees beginning May 1, 2012, did not refer to an existing obligation to pay. O'Connor, 2014 WL 198347 at *4. In Baer, Judge Ponsor concluded similarly regarding a letter which contained the following language:

> Please be advised that should this matter proceed and a court action be necessary, we will ask the court to award damages representing the fair market value of the premises from the time of the foreclosure until the time you are ordered to vacate. This amount is for use and occupancy, not rent.

Baer, 2009 WL 102698 at *1. He did so for three reasons: (1) the letter did not refer to a existing obligation; (2) it referred to "use and occupancy" rather than unpaid rent; and (3) it benefitted plaintiffs by notifying them of the date on which they could vacate the premises without incurring liability. Id.

I reach the same conclusion. To be sure, this case is closer than O'Connor because there, unlike here, the NTV letter states that the purported debt will be incurred in the future.[5] But as in Baer, the NTV letter in this case refers only to future

---

[4]O'Connor was released after the parties filed their respective motions and opposition in this case. Plaintiffs have filed a "Notice of Supplemental Authority" attaching the case. Docket # 26.

[5]Defendant Retained Realty appears confused about the date of the letter sent on its own behalf. Retained states, "[n]o reasonable person would read that letter on February 21, 2011 and think they were obligated to pay anything yet." Mem. in Supp. at 8. The letter is dated February 21, 2013, not 2011.

liability.  The NTV letter warns plaintiffs of defendants' intention to seek damages if plaintiffs do not respond to the NTV letter.  The obligation to pay money would not arise until some future date.  As Judge Ponsor stated, "[t]he reference to potential damages that Defendant might seek on behalf of its client if it was required to go to court to obtain an involuntary eviction cannot be twisted into a demand for payment of a 'debt.'" Id. at *1.  Because plaintiffs had no existing obligation to pay money, as the FDCPA and MFDCPA require, defendants' letter did not attempt to collect a "debt."  Count I fails as a matter of law.

### B.   Count II: 93A

Plaintiffs allege that the NTV letter constitutes an "unfair or deceptive act[] or practice[] in the conduct of any trade or commerce," in violation of Massachusetts General Law Chapter 93A, §§ 2 and 9.  Each defendant moves to dismiss, arguing that the substance of plaintiffs' 93A claim is premised on their failed FDCPA and MFDCPA claims and should therefore fail as well.  Retained Realty additionally moves to dismiss for failure to make a written demand for relief.

### 1.   Retained Realty

A plaintiff must serve on defendant a demand letter prior to filing suit under Chapter 93A.  Entrialgo v. Twin City Dodge, Inc., 333 N.E.2d 202, 204 (Mass. 1975) ("A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved.").  Here, plaintiffs only allege that they sent a demand letter to Hayes and his law firm; they say nothing about

---

Docket # 9-1.

Retained Realty.  See Compl. ¶ 34.  Indeed, plaintiffs appear to acknowledge their

failure to do so.  Pls.' Mem. in Opp. at 15 ("A c. 93A letter was sent to *Retained's*

*attorneys* prior to suit . . . .") (emphasis added).  Accordingly, because plaintiffs have

failed to satisfy a statutory prerequisite, they have not properly stated a 93A claim

against Retained Realty.  See O'Connor, 2014 WL 198347 at *11.

### 2.    Stephen Hayes and Hayes & Hayes, PC

The remaining defendants argue plaintiffs' 93A claim derives from their failed

statutory claims.  Plaintiffs contend I may still find 93A liability in absence of FDCPA or

MFDCPA liability.

I need not delve into this matter because plaintiffs have failed to satisfy another

statutory requirement: defendants were engaged in trade or commerce.  See Klairmont

v. Gainsboro Rest., Inc., 987 N.E.2d 1247, 1255 (Mass. 2013).  When someone other

than a client brings a claim against an attorney, the attorney "must have been acting in

a business context" with regard to the plaintiff to find liability under 93A.  Tetrault v.

Mahoney, Hawkes & Goldings, 681 N.E.2d 1189, 1195 (Mass. 1997).  Courts have held

that an attorney who engages in litigation to recover funds for a client does not act in a

"business context" because the attorney does not enter the commercial marketplace;

he or she seeks only to resolve a private business dispute.  See O'Connor, 2014 WL

198347 at *11; McDermott v. Marcus, Errico, Emmer & Brooks, P.C., Civil Action No.

09-10159-MBB, 2013 WL 4539071, at *6 (D. Mass. Aug. 26, 2013); First Enters., Ltd. v.

Cooper, 680 N.E.2d 1163, 1165 (Mass. 1997).  That is exactly what defendants did

here.  Because Hayes and his law firm did not act in a "business context," they were

6

not engaged in "trade or commerce," and plaintiffs' claim fails.

## IV.   Conclusion

Defendants' motions to dismiss (Docket ## 7, 13) are ALLOWED.[6]  Defendant

Retained Realty's motion to strike the affidavit of plaintiff Doneyn Bourke (Docket # 17)

is DENIED AS MOOT.  Judgment may be entered dismissing the complaint.

|  |  |
|---|---|
| _____March 7, 2014_____ | _____/s/Rya W. Zobel_____ |
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |

---

[6]Plaintiffs seek leave to amend their complaint in the event I allow defendants' motions to dismiss.  Pls.' Mem. in Opp. at 16.  Yet they provide no explanation of what additional facts or claims they will plead if allowed to do so.  Their motion for leave to amend is DENIED.  See Gierbolini-Rosa v. Banco Popular de P.R., 121 F.3d 695, at *5 (1st Cir. 1997) (unpublished order) (stating district court may rely on claims as pleaded in the complaint and need not "shoot at a moving target").